UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

F.G. CROSTHWAITE, et al.,

Plaintiffs,

v.

APOSHIAN EXCAVATING
COMPANY, INC.,

Defendant.

Case No. 13-cv-00363-TEH

**ORDER DENYING DEFENDANT'S
MOTION TO SET ASIDE DEFAULT
AND REFERRING MOTION FOR
DEFAULT JUDGMENT TO
MAGISTRATE JUDGE FOR
REPORT AND
RECOMMENDATION**

This matter came before the Court on March 31, 2014, on the motion of Defendant Aposhian Excavating Company, Inc. ("Defendant") to set aside entry of default. Plaintiffs had previously moved for entry of default judgment, which the Court took under submission pending resolution of the instant motion. In light of the written and oral arguments made by the parties, the Court DENIES Defendant's motion to set aside default, and REFERS the pending motion for entry of default judgment to a Magistrate Judge for a Report and Recommendation.

**BACKGROUND**

Plaintiffs – which are various employee benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3), and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO, *see generally* Complaint ¶ 1-2 – entered into a collective bargaining agreement with Defendant, a construction company that employed workers and paid for their fringe benefits through the plans. *Id*. ¶¶ 10-11. On January 25, 2013, Plaintiffs filed a complaint pursuant to ERISA § 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), alleging that Defendant violated the collective bargaining agreement by failing to make regular and timely contributions to the plans; Plaintiffs sought, *inter alia*, payment of the delinquent

1   contributions, liquidated damages and attorneys' fees and costs, as provided for in the

2   collective bargaining agreement. *Id*. at Prayer ¶ 2. As early as October 25, 2012, Plaintiffs

3   demanded payment of delinquent fringe benefit contributions owed for work performed by

4   Defendant's employees for certain months in 2011 and 2012. Jan. 13, 2014 Nanda Decl. ¶

5   3, Docket No. 38. Plaintiffs filed suit when they were unable to collect payments from or

6   otherwise negotiate an agreement with Defendant based on conversations with Defendant's

7   President, David Aposhian ("Aposhian"). *See id.* ¶¶ 3-12. In contrast, Aposhian claims

8   that Plaintiffs did not negotiate in good faith, would increase the figures of previously

9   agreed upon oral settlements by 30% to 50% in follow-up written correspondence, and

10   generally demanded growing attorneys' fees. Mar. 12, 2014 Aposhian Decl. ¶ 2, Docket

11   No. 50-1.

12       After filing suit on January 25, 2013, Plaintiffs engaged in numerous attempts to

13   serve Defendant with the Summons and Complaint, and to reach a settlement. These

14   attempts failed. The Court details this history because it is relevant to whether good cause

15   exists to set aside default. On February 4, 2013, a paralegal for Plaintiffs' counsel emailed

16   and mailed Aposhian a combined Notice and Acknowledgment of the Summons and

17   Complaint and Judgment Pursuant to Stipulation setting forth a payment plan. Jan. 13,

18   2014 Nanda Decl. ¶ 17 & Ex. N. Aposhian indicated that he would agree to acknowledge

19   service of the Summons and Complaint, and sign the Stipulation on behalf of Defendant,

20   and as an individual guarantor, but he did not do so. *Id*. ¶¶ 18-19. On February 20, 2013,

21   when Aposhian had not returned the signed documents, Plaintiffs' counsel provided the

22   Summons, Complaint, related documents, and Stipulation to a process server with

23   instructions to serve the documents upon Defendant. *Id*. ¶ 20. On March 1, 2013,

24   Aposhian emailed Plaintiffs' counsel's paralegal and stated that he "received the papers

25   and will return them asap." *Id*. ¶ 21 & Ex. Q. As discussed below, the process server was

26   unable to find and serve Defendant, so Aposhian presumably received the documents by

27   different means, such as from the emails Plaintiffs' counsel sent. On March 14, 2013,

28   Aposhian emailed Plaintiffs' counsel's paralegal stating that he had called and emailed

United States District Court
Northern District of California

2

Plaintiffs' counsel with questions about the payment plan but she refused to respond; he also stated that his attorney was reviewing the Stipulation, and as soon as he was finished reviewing, Aposhian would be in touch. *Id*. ¶ 23 & Ex. R.  Plaintiffs never received the signed Stipulation from Aposhian, and he refused to formally acknowledge receipt of the Summons and Complaint. *Id*. ¶ 24.

Meanwhile, the process server made seven attempts to serve Defendant at the address of record listed on the Utah Secretary of State website, but without success. *Id*. ¶ 25 & Ex. S.  Plaintiffs then retained a private investigator to locate and personally serve Defendant.  The investigator advised Plaintiffs' counsel that the address of record for Defendant designated with the Utah Secretary of State for service of process was not accurate, as Aposhian had relocated from that address some time ago.  Plaintiffs' investigator identified several other potential addresses for Defendant, but was unable to confirm the addresses or otherwise locate Defendant. *Id*. ¶¶ 26-27.  Plaintiffs' counsel avers that she then asked the Union representative in that area to try to find an address for Aposhian, but the representative too was unsuccessful.  Mar. 5, 2014 Stafford Decl. ¶ 9, Docket No. 48-3.  On June 4, 2013, Plaintiffs moved for permission to serve Defendant by publication.  Docket Nos. 15-17.  The Court denied this motion because it was unclear at that time whether the proposed newspaper was one of "general circulation," as required by the Utah statute governing service by publication.  Docket No. 18. Plaintiffs' counsel avers that she told Aposhian that Plaintiffs would seek to serve him by publication, and that this "upset and concerned" him, but that he still "would not accept service."  Mar. 5, 2014 Stafford Decl. ¶ 9.

In mid-July, 2013, Plaintiffs' attorneys spoke with Aposhian by telephone in an attempt to resolve the matter and to obtain his address. *Id*. ¶ 10.  Plaintiffs' counsel avers that she "asked him repeatedly during [the] conversation to provide his address, and he repeatedly ignored [her] and/or changed the subject," and opines that "[t]here was no doubt in [her] mind that he was intentionally avoiding service, although again, he had advised that he would accept." *Id*.  She avers that Aposhian then gave her an address in Heber,

United States District Court
Northern District of California

1  Utah, for an office building for 3 different businesses, one of which was his wife's, and

2  said that "the receptionist could get mail for him" and "accept mail," although Aposhian

3  "refused to agree that the receptionist could accept service for Defendant." *Id*.  Plaintiffs

4  did not attempt to serve Defendant here because, according to Plaintiffs' counsel, "there

5  was no way that [she] was going to allow improper and/or questionable service of

6  process." *Id*.  Aposhian contests this account.  He avers that he "told Plaintiffs' attorneys

7  [he] could be served with the Summons and Complaint at [the Heber City address] where a

8  receptionist is available Monday through Friday, 9:00 a.m. to 5:00 p.m," but neither he nor

9  the receptionist were ever served there.  Feb. 19, 2014 Aposhian Decl. ¶ 2, Docket No. 42-

10  1.  He further avers that "[w]hen [he] gave Plaintiffs' counsel the address of [his] office in

11  Heber City, Utah as a location where [he] could receive the Summons and Complaint, [he]

12  informed them that the receptionist there worked for both [his] wife and [him], not just

13  [his] wife."  Mar. 12, 2014 Aposhian Decl. ¶ 4, Docket No. 50-1.

14          On August 27, 2013, Plaintiffs again moved for service by publication.  Docket

15  Nos. 21-23.  The Court granted the motion and authorized service by publication on

16  September 6, 2013.  Docket No. 25.  Pursuant to the Court's order, Plaintiffs published the

17  summons in the Salt Lake Tribune, a newspaper of general circulation published in the

18  State of Utah, once a week for four weeks beginning on September 13, 2013, with the final

19  publication on October 4, 2013.  Docket No. 26.

20          Aposhian wrote a letter to the Court, dated October 20, 2013, stating that he was in

21  the process of paying Plaintiffs, had made a "good faith" payment of $12,883.91, and was

22  looking to secure local counsel, and asked the Court to "give [him] time to secure local

23  counsel to defend [him] before granting a judgment against [his company]."  Docket No.

24  31 (filed Oct. 30, 2013).  On October 31, 2013, Plaintiffs moved for entry of default,

25  Docket No. 30, which the Clerk granted on November 5, 2013.  Docket No. 32.

26          Notwithstanding Aposhian's letter to the Court, Defendant thereafter failed to file

27  an answer, enter the appearance of an attorney, move to set aside default, or otherwise

28  make any contact with the Court for the next three-and-a-half months.  On January 13,

4

United States District Court
Northern District of California

2014, Plaintiffs moved for entry of default judgment.  Docket No. 36.  Defendant did not timely oppose the motion.  However, five days before the February 24, 2014 hearing on the motion for default judgment, Defendant filed the instant motion to set aside default, Docket No. 42, and filed an untimely opposition to the pending motion for default judgment.  Docket No. 44.  At the February 24, 2014 hearing, the Court took the motion for default judgment under submission pending resolution of the instant motion to set aside default.

**LEGAL STANDARD**

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.  Fed. R. Civ. P. 55 (a).[1]  In determining whether to set aside default for good cause under Rule 55(c), the court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether setting aside the default would prejudice the other party.  *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default."  *Id.*  Importantly, "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Id.* at 1091.

**DISCUSSION**

    **A.**    **Entry of Default Was Procedurally Proper.**

As a preliminary matter, Defendant raises several procedural challenges to the

---

[1] All references to "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

Clerk's entry of default under Rule 55(a), none of which have merit.

### 1.    Service of Process.

Defendant argues that the default is void due to a defect in service of process.  Mot. at 3, Docket No. 42-6.  A default or default judgment can be rendered void by failure to properly serve a defaulting defendant.  *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992).  Defendant, as the party moving to set aside default on the basis of improper service, bears the burden to prove that he is entitled to relief.  *Cf. E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (burden on defendant moving to vacate default judgment).  The Court finds that service by publication was proper here.

Rule 4(h) governs service of process on corporations.  It provides that a corporation may be served, *inter alia*, pursuant to the law of the state where the district court is located – here, California – or where service is to be made – here, Utah.  *See* Fed. R. Civ. P. 4(h)(1)(A) (referring to service under Rule 4(e)(1), which provides for service pursuant to state law).  California law provides that a summons may be served by publication if, upon affidavit, a court is satisfied "the party to be served cannot with reasonable diligence be served in another manner specified" by statute.  Cal. Civ. Proc. Code § 415.50.  Utah law provides for service by publication on several grounds, including where, upon affidavit, "the identity or whereabouts of the person to be served are unknown and cannot be ascertained through reasonable diligence."  Utah R. Civ. P. 4(d)(4)(A).  Here, Plaintiffs moved to serve Defendant by publication under both California and Utah law.  Docket No. 22.  Plaintiffs' counsel averred in the declaration in support of the motion to serve by publication that: Aposhian, as President of Defendant, had received via email the Notice and Acknowledgment of Receipt of the Summons and Complaint, and a draft stipulated settlement, but had refused to acknowledge service of process; the process server hired by Plaintiffs to serve Defendant at the address designated by the Utah Secretary of State for service of process tried unsuccessfully to serve Defendant seven times; Plaintiffs hired a private investigator who advised that the address provided for Defendant was no longer accurate, and could not confirm any other potential addresses for Aposhian; Plaintiffs'

counsel, in fact, spoke to Aposhian as late as August 13, 2013, advising him that Plaintiffs would seek permission from the Court to serve by publication; and Plaintiffs' counsel again sent him a Notice and Acknowledgment of Receipt of the Summons and Complaint via email, but he neither responded nor executed the Notice and Acknowledgment of Receipt.  Aug. 27, 2013 Nanda Decl., ¶¶ 3-7, 11, Docket No. 23.  In light of this evidence, the Court found on September 6, 2013, that Defendant could not be served with reasonable diligence in any other manner set forth under the Federal Rules of Civil Procedure, California Code of Civil Procedure sections 415.10 through 415.30, or Utah Rules of Civil Procedure 4(d)(1) or 4(d)(2), and authorized service by publication.  Docket No. 25.

Defendant now argues that Plaintiffs did not exercise reasonable diligence in attempting to serve or locate him because he told Plaintiffs' counsel that he could be served with the Summons and Complaint at an office in Heber City, Utah via a receptionist who worked for him and his wife, and that Plaintiffs never availed themselves of this opportunity to properly serve him there before resorting to service by publication.  Feb. 19, 2014 Aposhian Decl. ¶ 2; Mar. 12, 2014 Aposhian Decl. ¶ 4.  Plaintiffs' counsel avers that although Aposhian agreed that the receptionist could "accept mail" for him, he refused to agree that the receptionist could accept service on behalf of Defendant, and thus Plaintiffs did not serve him there due to concerns about defects in such service of process.  Mar. 5, 2014 Stafford Decl. ¶ 10.  Resolution of this factual dispute, however, is unnecessary because the Court finds that service by publication, which the Court approved, was ultimately proper.

In addition to a showing of "reasonable diligence," Utah law specifically allows service by publication "where there exists good cause to believe that the person to be served is avoiding service of process."  Utah R. Civ. P. 4(d)(4)(A).  In light of what appears to have been multiple refusals to sign the Notice of Acknowledgment and Receipt of the Summons and Complaint between the filing of the lawsuit in January 2013, and as late as August 2013, the Court finds that service by publication would have also been proper on the basis that Aposhian evaded service of process.  Thus, that Plaintiffs may

7

United States District Court
Northern District of California

1  have been able to serve Defendant via other theoretical means does not defeat the validity

2  of Plaintiffs' service by publication here.  This conclusion is strengthened by the absence

3  of concern "that service by publication rarely results in actual notice," *Watts v. Crawford*,

4  10 Cal. 4th 743, 749, n.5 (1995), because Aposhian was well-aware of the existence of the

5  lawsuit.  *Cf. Internet Solutions for Bus. Inc.*, 509 F.3d at 1166 n.6 (observing relevance of

6  defaulting defendant's acknowledgment that he knew the suit had been filed).  Plaintiffs'

7  counsel exchanged emails with Aposhian that discuss the filed lawsuit and request his

8  signature of the Acknowledgment and Receipt of the Summons and Complaint.  *See, e.g.*,

9  Jan. 13, 2014 Nanda Decl. Ex. N (Feb. 4, 2013 email enclosing letter from Plaintiffs'

10  counsel to Aposhian attaching Notice and Acknowledgement of Summons and

11  Complaint); *see also id.* ¶¶ 17-19, 21 & Ex. R (Aposhian writing in response to Feb. 4,

12  2013 email: "I received the papers and will return them ASAP" and "my attorney is

13  reviewing" the payment plan included with the papers).  Moreover, Aposhian included the

14  case number for the instant action in his October 20, 2013 letter to this Court, further

15  indicting that he had actual notice of the lawsuit.[2]  Docket No. 31.  Defendant has failed to

16  meet its burden to show a defect in service of process.  Accordingly, as service by

17  publication was proper, the default entered by the Clerk is not void.

18

19

20  [2] Defendant's citation to *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), for
the proposition that service by publication is insufficient where a defendant's location is
21  known is inapposite.  In that case, the Court held that notice by publication and posting of
an intended tax sale of property did not satisfy the requirements of the Due Process Clause,
22  because it could not "be expected to lead to actual notice to the mortgagee" on the basis
that such notices are meant to attract prospective purchasers and mortgagees are unlikely
23  to make "special efforts to keep abreast of such notices."  *Id.* at 799.  Accordingly, the
Court held that "[n]otice by mail or other means as certain to ensure actual notice is a
24  minimum constitutional precondition to a proceeding which will adversely affect the
liberty or property interests of any party, whether unlettered or well versed in commercial
25  practice, if its name and address are reasonably ascertainable."  *Id.* at 800.  *Mennonite* did
not hold that in all circumstances service by publication can be defeated by the theoretical
26  existence of a reasonably ascertainable address, especially where circumstances indicate
that a defendant has evaded service of process.  Here, service by publication was proper
27  under Utah law, Defendant had actual notice of the existence of the suit, and thus the
possibility that he may have been served at an alternative address does not defeat the
28  Court-approved service by publication.

United States District Court
Northern District of California

### 2.    Response Indicating Intent to Defend Prior to Entry of Default.

The Court finds unpersuasive Defendant's argument that the Clerk improperly entered default because Aposhian's October 20, 2013 letter to the Court constitutes a pleading or otherwise shows an intention to defend the action.  Under Rule 55(a) of the Federal Rules of Civil Procedure, the clerk must enter a party's default when shown by affidavit that the defaulting party has "failed to plead or otherwise defend" against the action.  Fed. R. Civ. P. 55(a).  Defendant directs the Court to authority interpreting Rule 55(b)(1) – governing entry of default judgment against a party who has failed to appear – for the proposition that courts generally find that "an appearance in an action 'involves some presentation or submission to the court' . . . [b]ut because judgments by default are disfavored, 'a court usually will try to find that there has been an appearance by defendant.'"  *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2683, at 415, 430 (2d ed. 1983)).  While judgments by default are disfavored, the practice of liberally interpreting an appearance or finding an intent to defend is not without limitation.  For example, in *Wilson v. Moore and Associates, Inc.*, 564 F.2d 366, 369 (9th Cir. 1977), the court held that the president of corporation's informal letter to plaintiff's counsel (a copy of which was sent to the clerk of the district court) was not the equivalent of a formal court appearance where the plaintiff provided actual, unqualified notice that a delay in answering the complaint would result in default.  *Id*. at 367.  Similarly, in *Direct Mail Specialists*, the court held default judgment could not be vacated on the basis that defendants "appeared" in the action.  There, "settlement negotiations" conducted before and on the day the summons was served, and an oblique mention of referring the case to an attorney, did not demonstrate an appearance or "a clear purpose to defend the suit."  840 F.2d at 689 (citations omitted).  These cases show that in the context of attempting to void a default judgment, courts require more than a colorable appearance and a mere inference of an intention to defend.

The Court rejects Defendant's argument that the Clerk's entry of default pursuant to

9

United States District Court
Northern District of California

1  Rule 55(a) must be set aside based on Aposhian's October 20, 2013 letter or retention of

2  counsel three months after entry of default.  First, "[c]orporations and other unincorporated

3  associations must appear in court through an attorney."  *In re Am. W. Airlines*, 40 F.3d

4  1058, 1059 (9th Cir. 1994) (citing *C.E. Pope Equity Trust v. United States*, 818 F.2d 696,

5  697-98 (9th Cir. 1987)).  As Aposhian is not an attorney, his letter cannot constitute a

6  formal appearance or a pleading filed on behalf of Defendant Aposhian Excavating

7  Company, Inc.  Additionally, to the extent Defendant argues that his letter constitutes an

8  appearance or a pleading, entry of default could have been rendered as a sanction because

9  of Defendant's failure to comply with Civil Local Rule 3-9(b), which requires that "a

10 corporation, unincorporated association, partnership or other such entity may appear only

11 through a member of the bar of this Court."  Civil L.R. 3-9(b); *see Employee Painter'*

12 *Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) (recognizing default as

13 a permissible sanction for failure to comply with local rules requiring representation by

14 counsel).

15        Second, Defendant nevertheless maintains that because the Clerk entered default six

16 days after the letter was received without warning, it should now be set aside.  The

17 authorities[3] cited by Defendant do not impose a requirement that the Court order

18 Defendant to retain counsel before the Clerk enters default, or otherwise suggest that the

19 Clerk violated Rule 55(a) by entering default, which the Clerk was required to do when it

20 appeared, upon affidavit, that Defendant failed to plead or otherwise defend the suit.

21        Third, the October 20, 2013 letter – in light of the history of the case both before

22 and after Aposhian sent it –does not evince a clear purpose to plead or otherwise defend

23 the suit sufficient to void the Clerk's default.  Here, Aposhian had knowledge of the

24 lawsuit as early as January, 2013.  He did not retain an attorney, despite writing to

25 Plaintiffs' counsel that he was having his attorney review the Notice and Acknowledgment

26 of the Summons and Complaint and Stipulated Settlement in March, 2013.  Jan. 13, 2014

27

28 [3] *See Employee Painter' Trust*, 480 F.3d at 998 & *United States v. High Country Broad.
Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993).

Nanda Decl. ¶¶ 21-23 &  Ex. R.  Defendant did not enter an appearance for counsel and Aposhian did not answer the complaint or even sign the Acknowledgment of Receipt of the Summons and Complaint, despite clearly having possession of it.  The Court is unaware of any evidence in the record whereby Defendant communicated a clear intention to defend itself in the lawsuit prior to October, 2013.  While Aposhian wrote to the Court on October 20, 2013, and asked the Court to "give [him] time to secure local counsel to defend [him] before granting a judgment against [his company]," Docket No. 31, Defendant then failed to enter an appearance of counsel or otherwise defend the suit over the next three months.  Thus, given this inaction both before and after Aposhian sent the letter, the Court cannot infer a clear purpose by Defendant to defend the suit.  *Cf. Direct Mail Specialists*, 840 F.2d at 689.  Accordingly, the Court finds that the Clerk's entry of default was not procedurally defective in this regard.

### 3.    Complaint Seeking Amount in Excess of That Demanded in Pleadings.

Defendant argues that entry of default was improper because Plaintiffs seek damages in excess of the amount pleaded in the complaint.  The authorities cited by the parties, however, pertain to Rule 54(c), which provides that a "*default judgment* must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c) (emphasis added).  At issue here is whether the Clerk properly entered default pursuant to Rule 55(a).  Rule 55(a) requires that the clerk enter the party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Defendant argues that because Plantiffs in their Complaint do not list the actual amount of contributions, liquidated damages, and attorneys' fees and costs sought, it "would be manifestly unfair if the court were then to award relief not previously specified – relief that, perforce, could not have been included in the defendant's decisional calculus."  *Hooper-Haas v. Ziegler Holdings*, LLC, 690 F.3d 34, 40 (1st Cir. 2012).  However, the Court notes that in the context of default judgment motions, "[c]ourts have awarded damages not specifically mentioned in complaints in ERISA cases where the defaulting defendants were on notice

of the post-complaint amounts sought." *Bd. of Trustees v. Tim Kruse Constr., Inc.*, No. C 12-05322 JSW, 2013 WL 5487368, at *3 (N.D. Cal. Oct. 2, 2013) (collecting cases).[4] Even though Rule 55(b)(1) is not squarely before the Court here, the complaint indicates that Defendant owed "a sum that can be made certain by computation," based on the collective bargaining agreement and records of payments, which undermines Defendant's argument. Moreover, consistent with *Tim Kruse Construction*, Plaintiffs submitted evidence that indicates multiple communications with Aposhian that apprised Defendant of the amounts owed. Thus, on Defendant's motion to set aside default, there is no indication that the Clerk's entry of default with respect to this issue was procedurally improper. To the extent Defendant argues that there is a factual dispute about the amounts owed, Defendant may raise those arguments in the context of the motion for default judgment, discussed below.

**B.     Defendant's Culpable Conduct Led to Entry of Default.**

The Court declines to exercise its discretion to vacate the default entered against Defendant because the record reflects culpable conduct by Aposhian, Defendant's President, leading to entry of default. *Brandt v. Am. Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1110 (9th Cir. 2011). "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Yubran S. Mesle*, 615 F.3d at 1092 (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in *TCI Group*)). As the Ninth Circuit explained:

> in this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." We have "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors

---

[4] Defendant's attempt to distinguish *Tim Kruse Construction* on the basis that the defendant there had been properly served fails because, here, Plaintiffs properly served Defendant by publication.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

*Id.* (citing *TCI Group*, 244 F.3d at 697-98).

First, Aposhian had actual notice of the filing of the action, as indicated from the multiple email correspondences and phone calls between Plaintiffs' counsel and Aposhian. Aposhian knew Plaintiffs filed suit against him as early as February 4, 2013, when a paralegal for Plaintiffs' counsel emailed him a Notice and Acknowledgement of the Summons and Compliant, and attached those and related documents.  Jan. 13, 2014 Nanda Decl. ¶ 17 & Ex. N.  On March 1, 2013, Aposhian emailed Plaintiffs' counsel's paralegal and stated that he "received the papers and will return them asap." *Id*. ¶ 21 & Ex. Q.  He failed to do so.  On March 14, 2013, Aposhian emailed Plaintiffs' counsel and acknowledged that his attorney was reviewing the Stipulation, which was part of a Notice and Acknowldgement of the Summons and Complaint; this admission raises the question of why he did not subsequently accept service or defend the action if he was in contact with an attorney at this early procedural stage. *Id*. ¶ 23 & Ex. R.

Second, the Court finds that this conduct shows an intentional failure to answer. Plaintiffs hired a process server, and when attempts to serve Defendant failed, resorted to hiring a private investigator to track down a valid address.  Aposhian had knowledge that Plaintiffs were going to serve him via publication, and did not appear or otherwise defend against the suit at that time.  In fact, he only sent a letter to the Court after the Salt Lake Tribune published and republished the summons over a four-week period.  In fact, despite Aposhian's October 20, 2013 letter to the Court – wherein he states for the first time that he needed time to secure local counsel before a grant of default against his company – he then waited over three additional months after default was entered before retaining counsel.  This long delay further supports the inference that this conduct was willful. Lastly, Defendant moved to set aside default five days before the scheduled hearing on Plaintiffs' motion for default judgment, which indicates that Defendant waited until the last possible opportunity to take action and respond to the lawsuit.

Based on this record, the Court concludes that Defendant evaded service of process

United States District Court
Northern District of California

and engaged in delay tactics over a nearly ten month period.  These actions are consistent with an "intention to take advantage of" Plaintiffs and "manipulate the legal process," and the Court finds that "there is no explanation of the default inconsistent with a . . . deliberate, willful, or bad faith failure to respond."  *TCI Group*, 244 F.3d at 697-98.  Moreover, "were the Court to vacate the default against Defendant it would prejudice Plaintiffs by encouraging a continued pattern of conduct that is a burden to Plaintiffs and the Court and is contrary to the purposes of ERISA."  *Bd. of Trustees of the Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, No. 12-CV-05655-JCS, 2014 WL 46633, at *2 (N.D. Cal. Jan. 6, 2014).  Because of Defendant's culpable conduct leading to entry of default, the Court DENIES Defendant's motion to set aside default because he has failed to show good cause pursuant to Rule 55(c).

## C.    The Court Refers Plaintiffs' Motion for Default Judgment to a Magistrate Judge for a Report and Recommendation.

Presently before the Court is Plaintiffs' motion for default judgment, filed on January 13, 2014.  Defendant, once he retained counsel, filed an untimely opposition requesting a continuance of the hearing on the motion for default judgment and asserting that factual disputes exist regarding the amount of contributions and liquidated damages owed.  Docket No. 44; *see also* Feb. 19, 2014 Aposhian Decl. ¶ 3(b) (presenting evidence in support of his contention that his accounting of unpaid contributions and liquidated damages is no more than $7,424.60 versus Plaintiffs' figure of $21,670).  The Court finds that resolution of Plaintiffs' motion for default judgment, and in particular any factual findings with respect to the amount of money at stake and the possibility of a dispute regarding material facts in this regard, is appropriate for adjudication by a Magistrate Judge.  Accordingly,

1) Pursuant to Civil Local Rule 72-1, all matters concerning Plaintiffs' motion for default judgment – including the amount of contributions, damages, reasonable attorneys' fees and costs owed to Plaintiffs – are referred to a randomly assigned Magistrate Judge.

14

1       2) The Magistrate Judge shall supervise and issue findings and recommendations

2  regarding this referred motion for default judgment, and may make any order for

3  supplemental briefing or hold an evidentiary hearing on all matters connected thereto.  The

4  Magistrate Judge shall file the findings and recommendations with the Clerk of Court and

5  serve a copy on the parties in this action.

6       3) Unless otherwise provided, within 14 days of the service of the findings and

7  recommendations, any party may serve and file objections thereto, together with notice

8  setting the objections for hearing before this Court.  The objecting party shall note each

9  particular finding and recommendation to which an objection is made, shall note the legal

10  authority for the objection, and shall propose alternative findings or recommendations.

11       4) Unless otherwise provided, within 14 days of the service of the objections, any

12  party may serve and file a response thereto.  Within 5 days of the service of the response,

13  the objecting party may file a reply thereto.

14       5) The memoranda and other papers filed in support of the objections, in opposition

15  thereto, and reply shall conform with Civil Local Rule 7.

16       6) This Court's review of the findings and recommendations and objections thereto

17  will conform with Civil Local Rule 72-3.

19  **CONCLUSION**

20       For the foregoing reasons, Defendant's motion to set aside default is DENIED, and

21  Plaintiffs' motion for entry of default judgment is REFERRED to a Magistrate Judge.

23  **IT IS SO ORDERED.**

25  Dated:   04/10/14

                                      THELTON E. HENDERSON
                                      United States District Judge

United States District Court
Northern District of California