IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.G. CROSTHWAITE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>APOSHIAN EXCAVATING CO.,<br><br>　　　　Defendant. | No. C -13-00363 TEH (EDL)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

Plaintiffs seek default judgment to recover unpaid contributions, liquidated damages, interest, attorneys' fees, and costs totaling $69,219.11. (Dkt. 17; 27.)[1] For the reasons set forth below, the Court recommends granting Plaintiffs' motion.

**I.　Background**

　　A.　Factual Background

Plaintiffs are various employee benefit plans as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3), and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union"). (Compl. ¶¶ 1-2; Nanda Decl. ¶ 2.) Plaintiffs' principal offices are in the city and county of Alameda, California. (Nanda Decl. ¶ 2.) Defendant Aposhian Excavating Company is a Utah construction company that employed workers and made contributions for their fringe benefits under a collective bargaining agreement (the "Utah Master Agreement" or "bargaining agreement") with the Union. (Compl. ¶¶ 10-11; Dkt. 53 at 2; Hayner Decl. ¶ 2.) The bargaining agreement incorporates the terms

---

[1] In the Second Supplemental Stafford Declaration, Plaintiffs seek $70,318.00. (2d Supp. Stafford Decl. ¶ 5, Dkt. 58.) At the May 23, 2014, hearing, however, David Hayner testified that there was an error in the right-hand column for January 2014 in the spreadsheet in the declaration. Instead of $2,397.40, the amount should have been $1,298.51. Accordingly, Plaintiffs seek $69,219.11 as opposed to $70,318.00.

1  of various trust agreements, which require Defendant to pay contributions to Plaintiffs and which set
2  forth procedures to follow if Defendant fails to do so.  (Hayner Decl. ¶ 3.)

3  As early as October 25, 2012, Plaintiffs sought payment from Defendant of delinquent fringe
4  benefit contributions.  (Nanda Decl. ¶ 3.)  Plaintiffs went back and forth with Defendant regarding
5  delinquencies and payment plans repeatedly from this point through December 2012.  (Nanda Decl.
6  ¶¶ 3-13.)  Plaintiffs' settlement efforts were ultimately unsuccessful, and Plaintiffs filed suit in
7  January 2013.  (Id.)  Plaintiffs continued to try to negotiate with Defendant after the complaint was
8  filed and advised him that he was incurring liability for attorneys' fees.  (Nanda Decl. ¶ 15.)
9  Although Plaintiffs provided Defendant with a stipulated payment plan, Defendant did not sign the
10 stipulation despite representing that he was willing to do so.  (Nanda Decl. ¶¶ 17-20, 35-36.)
11 Meanwhile, Plaintiffs had to hire a process server and then a private investigator to facilitate service
12 on Defendant.  (Nanda Decl. ¶¶ 20, 25-33, 37.)  Around September 2013, Defendant made several
13 partial contribution payments.  (Nanda Decl. ¶ 34.)

14  B. Procedural History

15 Plaintiffs filed suit against Defendant under 29 U.S.C. § 1132(g)(2)(A) alleging that it
16 violated the collective bargaining agreement by failing to make regular and timely contributions to
17 the plans for hours worked by its employees during the months of April through October 2012.
18 (Compl. ¶ 14.)  Plaintiffs also alleged that Defendant failed to pay liquidated damages and interest
19 for those months, as well as liquidated damages and interest "for prior late-paid contributions."  (Id.)
20 Plaintiffs reserved their right to conduct an audit of Defendant's records as may be necessary, and to
21 collect all amounts that may be found to be due, subject to proof."  (Compl. ¶ 16.)  Plaintiffs sought
22 to recover delinquent contributions, liquidated damages, attorney's fees, and costs.  (Compl. at
23 Prayer 2.)  Plaintiffs also sought "[a]ny additional contributions payable at time of judgment to
24 Plaintiffs, and to the Union, plus interest and liquidated damages in accordance with the" bargaining
25 agreement.  (Id.)

26 Plaintiffs engaged in numerous unsuccessful attempts to serve Defendant with the complaint
27 and to settle the case.  (Dkt. 53 at 2-3 (describing efforts).)  Ultimately, the District Judge authorized
28 service by publication on September 6, 2013.  (Dkt. 25.)  Plaintiffs published the summons in Utah

once a week for four weeks beginning on September 13, 2013. Although Defendant sent the District Judge a letter asking for more time before granting a judgment against him, Defendant failed to file an answer, move to set aside default, or otherwise contact the District Judge from October 20, 2013, through February 19, 2014. (Dkt. 53.)

On October 31, 2013, Plaintiffs moved for entry of default, which the Clerk granted on November 5, 2013. (Dkt. 30; 32.) On January 13, 2014, Plaintiffs moved for default judgment, and a hearing on the motion was set for February 24, 2014. Plaintiffs sought $24,643.45 in unpaid and estimated contributions, liquidated damages, and interest, $20,501.00 in attorneys' fees through January 9, 2014, $1,596.40 in costs, and estimated additional attorneys' fees of $1,060.00, for a total of $47,800.58. (Hayner Decl. ¶ 11.)

Defendant did not timely oppose the motion for default judgment. On February 12, 2014, the District Judge ordered Plaintiffs to submit a supplemental declaration explaining how liquidated damages and interest were calculated, which Plaintiffs did. (Dkt. 40; Supp. Hayner Decl., Dkt. 41.) In the supplemental declaration, David Hayner, Plaintiffs' Collections Manager, explained how liquidated damages and interest were calculated using February 2012 and October 2013 as examples. (Supp. Hayner Decl.)

On February 19, 2014, five days before the hearing on the default judgment motion, Defendant moved to set aside default. The District Judge held a hearing on Plaintiff's motion for default judgment on February 24, 2014. On March 21, 2014, Plaintiffs increased their request for attorneys' fees by $18,259.00, primarily due to additional time spent on declarations in support of default judgment and on Defendant's motion to set aside default. (Supp. Stafford Decl. ¶ 6, Dkt. 51.)

The District Judge denied Defendant's motion to set aside default on April 10, 2014. (Dkt. 53.) The District Judge rejected Defendant's procedural challenges to the Clerk's entry of default and declined to exercise its discretion to vacate the default because David Aposhian, Defendant's president, engaged in culpable conduct leading to entry of default. This conduct included evading service and engaging in delay tactics over a nearly ten month period, which was consistent with an intent to take advantage of Plaintiffs and manipulate the legal process. (Dkt. 53 at 14.)

3

1    The District Judge referred all matters concerning Plaintiffs' motion for default judgment, including the amount of contributions, damages, reasonable attorneys' fees and costs owed to Plaintiffs, to this Court for a report and recommendation. The Court ordered the parties to submit supplemental briefing. In its reply, Plaintiff sought $24,570.60 in unpaid and estimated contributions, liquidated damages, and interest, $44,151.00 in attorneys' fees, and $1,596.40 in costs, for a total of $70,318.00. The Court held a hearing on May 23, 2014, at which David Hayner testified under oath.

**II.     Discussion**

    A.     <u>Jurisdiction and Service of Process</u>

In considering whether to enter default judgment, a court must inquire into its jurisdiction over the subject matter and the parties. <u>Tuli v. Republic of Iraq</u>, 172 F.3d 707, 712 (9th Cir. 1999). Plaintiffs have properly pled subject matter jurisdiction under 29 U.S.C. §§ 185 and 1132. Plaintiffs have also adequately pled personal jurisdiction and established that service was appropriate. Plaintiffs alleged that Defendant is an employer under 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2), the principal offices of the trust funds are located in Alameda, California, and Plaintiffs served Defendant by publication.

    B.     <u>Default Judgment Factors</u>

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1). Defendant is not a minor, not incompetent, and not in military service. (Nanda Decl. ¶ 41.)

In considering the propriety of default judgment, a court looks at: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The <u>Eitel</u> factors weigh in favor of entry of default judgment. Plaintiffs' claims are meritorious and are adequately pled. Further, if the motion for default judgment is denied, Plaintiffs

4

would likely be without a remedy.  See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  The possibility of disputes as to material facts factor is neutral.  Because default was entered, the Court must take all well pled facts, except those relating to damages, as true.  See Fed. R. Civ. P. 8(b)(6).  There is thus no dispute as to Defendant's liability.  However, the parties dispute the amount of unpaid contributions, liquidated damages, interest, and attorneys' fees.  The excusable neglect factor weighs in favor of default judgment because the District Judge held that Defendant's default was due to its own culpable conduct.  Finally, the amount Plaintiffs seek is reasonable in that it is tailored to Defendant's conduct and is relatively modest.  See, e.g., Church Bros., LLC v. Garden of Eden Produce, LLC, Case No. 11-4114 EJD, 2012 U.S. Dist. LEXIS 48584, at *6  (N.D. Cal. Apr. 5, 2012) (finding that the "sum of money" factor favored default judgment because the $212,259.21 at issue there was modest compared to the $2,900,000 at issue in Eitel).

### C. Liability

Plaintiffs assert that Defendant breached the bargaining agreement and its statutory duties under 29 U.S.C. § 1145 by failing to pay contributions, liquidated damages, and interest thereon.  Under 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  The elements of a claim for unpaid contributions are: "(1) the trust fund is a multi-employer plan as defined by 29 U.S.C. §  1002(37); (2) the defendant is an employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance with the plan."  Bd. of Tr. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Environmental Sys., Case No. 03-4858 WHA, 2004 U.S. Dist. LEXIS 11987, at *5 (N.D. Cal. May 21, 2004).

Plaintiffs adequately alleged and have now demonstrated by declarations that Defendant is liable for unpaid contributions, liquidated damages, and interest.  Plaintiffs allege that the trust funds fall within 29 U.S.C. § 1145, which governs multiemployer plans. (Compl. ¶ 12.)  Defendant is an employer under 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2). (Compl. ¶ 3.)  Defendant agreed to be

5

bound by the bargaining agreement on July 29, 2011, which requires him to make contributions. (Hayner Decl. ¶¶ 2-3, Ex. A.)  The bargaining agreement is effective July 29, 2011, through June 30, 2014.  (Hayner Decl. ¶ 2, Ex. A.)

The bargaining agreement requires Defendant to make monthly contribution payments to Plaintiffs based on the number of hours worked by Defendant's employees.  (Hayner Decl. ¶¶ 2-4, Ex. A, Ex. B.)  Contributions are due by the fifteenth day of the month following the month in which the hours were worked and are delinquent if not received by the twenty-fifth day of that month.  (Hayner Decl. ¶¶ 4, Ex. A, Ex. B.)  The bargaining agreement also requires Defendant to pay liquidated damages and interest on delinquent contributions.  (Hayner Decl. ¶¶ 5-8, Ex. B.)  As of the date Plaintiffs filed the complaint, Defendant had failed to pay contributions for the months of April through October 2012.  (Compl. ¶ 14, Haynes Decl. ¶ 11.)

D.    Scope of Potential Recovery

Defendant argued in its motion to set aside default that default judgment is improper because Plaintiffs seek damages in excess of the amount pled in the complaint.  Defendant did not reiterate this argument in opposition to Plaintiffs' motion for default judgment.  Under Federal Rule of Civil Procedure Rule 54©, a default judgment must not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  It is undisputed that Plaintiffs did not set out a specific dollar amount in their complaint.  They sought $47,800.85 in their motion for default judgment, and they now seek $69,219.11.  (2d Supp. Stafford Decl. ¶ 5.)

As the District Judge noted, however, "'[c]ourts have awarded damages not specifically mentioned in complaints in ERISA cases where the defaulting defendants were on notice of the post-complaint amounts sought.'"  (Dk. 53 at 11-12 (quoting Bd. of Tr. v. Tim Kruse Constrs., Inc., Case No. 12-5322 JSW, 2013 WL 5487368, at *3 (N.D. Cal. Oct. 2, 2013)).)  See, e.g., Bd. of Tr. of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co. ("Air Balance"), Case No. 08-2038 SC, 2009 U.S. Dist. LEXIS 89373, at *10-*15 (N.D. Cal. June 17, 2009); Tr. of the Ironworkers Local Union No. 16 Pension Fund v. AS&L Indus. Servs. ("AS&L"), Case No. 12-2084, 2013 U.S. Dist. LEXIS 77721, at *3 (D. Md. May 31, 2013); Tr. of the St. Paul Elec. Constr. Indus. Fringe Ben. Funds v. Martens Elec. Co., 485 F. Supp. 2d 1063, 1064-69 (D. Minn.

6

2007); Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 361 (E.D.N.Y. 2005); cf. Tragni v. Souther Elec. Inc., Case No. 09-32 RS, 2009 U.S. Dist. LEXIS 86818, at *5-*7 (N.D. Cal. Sept. 2, 2009) (recommending that default judgment be denied because complaint was vague as to additional sums owed and Defendant lacked sufficient notice of additional amounts sought).

Here, Plaintiffs' recovery should not be limited by the lack of a monetary amount in the complaint or because Plaintiffs now seek more than they did when they moved for default judgment. Plaintiffs have kept Defendant apprised of the scope of its liability, which has mounted due to Defendant's conduct. In the Complaint, Plaintiffs specifically sought additional contributions, liquidated damages, and interest payable at the time of judgment. (Compl. at Prayer ¶ 2.) Moreover, Plaintiffs served Defendant by mail with the motion for default judgment and Defendants' counsel has received filings via ECF, facts that weighs in favor of awarding post-complaint damages. Air Balance, 2009 U.S. Dist. LEXIS 89373 at *12-*13; AS&L, 2013 U.S. Dist. LEXIS 77721 at *4. Plaintiffs also communicated with Defendant and, later, his counsel, by phone, email, and letter regarding his delinquent contribution reports, both before and after the complaint was filed. (Nanda Decl. ¶¶ 3-12, 14-23, 30, 35-36; 2d Supp. Stafford Decl. ¶¶ 12-13; Dkt. 53 at 12 ("Plaintiffs submitted evidence that indicates multiple communications with Aposhian that apprised Defendant of the amounts owed.").) That Defendant has a history of intermittent compliance followed by noncompliance, making his delinquency a "moving target," also weighs in favor of awarding post-complaint damages. Air Balance, 2009 U.S. Dist. LEXIS 89373 at *13.

E. Amount of Unpaid Contributions

In an action to enforce payment of delinquent contributions, "the court shall award the plan -- (A) the unpaid contributions, (B) interest on the unpaid contributions, © an amount equal to the greater of (I) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs . . . , and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). Plaintiffs bear the burden of proving their entitlement to relief through testimony or declarations. To that end, Plaintiffs submitted the declarations of David Hayner, the Collections Manager of the trust funds, and Shivani Nanda and

Michele Stafford, attorneys for Plaintiffs. Plaintiffs also provided Mr. Hayner's testimony at the hearing, and he cross-examined by Defendant.

Plaintiffs currently seek $11,353.97 in unpaid contributions. (2d Supp. Stafford Decl. ¶5 ) Defendant argues that its evidence and calculations show that Plaintiffs are entitled no more than $4,021.32 in unpaid contributions. According to Defendant, the calculations and copies of checks it submitted constitute primary evidence that trumps Plaintiffs' declarations. (Aposhian Decl. Ex. A.) In reply, Plaintiffs argue that Defendant's evidence confirms their calculations. According to Plaintiffs, Defendant's calculations are incorrect because Defendant does not take into account two bounced checks that led to several months of delinquencies. Defendant states that because two of Defendants' checks bounced, Defendant's later checks were not applied to the months Plaintiff indicated on the checks but were rather applied to earlier outstanding delinquencies. Plaintiffs contend that this led to a cascade of delinquent contributions and associated liquidated damages and interest, and Plaintiffs provided a chart evidencing how Defendant's checks were applied. (Pls.' Reply; 2d Supp. Stafford Decl. ¶¶ 10-11, Ex. A.)

At the May 23, 2014 hearing, David Hayner testified that when the trust funds receive a payment, they apply it first to the oldest delinquency on a specific fund by fund basis. For instance, delinquencies in the vacation fund would be paid first, followed by the pension plan and the welfare fund. He testified that taking into account Defendant's bounced checks and the application of the later checks, the amounts stated in Plaintiffs' declarations were accurate, except for the typographical error in the right-hand column of the January 2014 calculation. (See n.1, supra.) On cross examination, Defendant's counsel focused on the fact Plaintiffs did not apply the checks to the months as Defendant directed.

Plaintiffs have met their burden of showing that they are entitled to $11,353.97 in unpaid contributions. Plaintiffs' declarations and Hayner's testimony establish the amount of unpaid contributions. Defendant has not cited any authority or persuasively argued that Plaintiffs are forbidden from applying contribution payments to the earliest outstanding delinquency when an employer bounces a check. Nothing in the bargaining agreement prevents Plaintiffs from having their own reasonable accounting practices, and Hayner testified to the importance of paying certain

8

delinquent funds first. Having paid contributions untimely and with bad checks, Defendant does not cite any authority entitling it to dictate to Plaintiffs how its contribution payments should be applied.

### F. Liquidated Damages

Plaintiffs are also entitled to liquidated damages under 29 U.S.C. 1132(g)(2) of the greater of interest on unpaid contributions or liquidated damages set by contract not to exceed 20% of the unpaid amount. The bargaining agreement provides that if Defendant's contribution payments are late, and a lawsuit has not yet been filed, liquidated damages are ten percent of the unpaid contribution as of the delinquent date. (Hayner Decl. ¶ 6, Ex. B.) These pre-litigation liquidated damages are assessed on a fund-by-fund basis, and not all funds give rise to liquidated damages. (Hayner Decl. ¶ 6; Supp. Hayner Decl. ¶ 2.) Once a lawsuit has been filed, liquidated damages are the greater of twenty percent of the unpaid contributions or the interest on the amount of the unpaid contributions from the delinquent date until the dates they paid in full. (Hayner Decl. ¶ 6, Ex. B.)

Plaintiffs seek pre-litigation liquidated damages of $975.95 and post-litigation liquidated damages of $9,117.34. (2d Supp. Stafford Decl. ¶ 5; Pls.' Reply at 4-5.) Defendant does not address the former in his opposition. As to the latter, Defendant argues that he was only late in nine instances, which adds up to $3,403.28 in liquidated damages. Plaintiffs argue that Defendant's calculation is wrong because it fails to take into account the bounced checks and the method by which Plaintiffs applied Defendant's payments. As noted above, Plaintiffs have established that their method of applying Defendant's checks was appropriate, and they are entitled to the total liquidated damages of $10,093.29 that they seek.

### G. Interest

The bargaining agreement provides that Plaintiffs are entitled to interest of ten percent on delinquent contributions, calculated starting from the date a contribution is due, under 29 U.S.C. 1132(g)(2) and the bargaining agreement. (Hayner Decl. 7, Ex. B.) Once a payment is received, interest is recalculated and continues to accrue on the declining balance. (Supp Hayner Decl. ¶ 4.)

Defendant argues that Plaintiffs are not entitled to interest and liquidated damages. Both the bargaining agreement and ERISA, however, allow Plaintiffs to recover both. 29 U.S.C. §1132(g)(2).

9

In a section separate from that regarding liquidated damages, the bargaining agreement provides that "[u]npaid contributions shall accrue late interest charges from the delinquent date until paid at the rate of 10% per year simple interest." (Hayner Decl. Ex. B.)  Defendant does not challenge Plaintiff's interest calculations.  Plaintiffs are entitled to recover $2,024.45 in interest.

### H. Attorneys' Fees

Attorneys' fees and costs of the action shall be awarded to a trust fund or employee benefit plan that receives a judgment in its favor. See 29 U.S.C. § 1132(g)(2)(D).  Plaintiffs sought attorneys' fees of $20,501.00 and costs of $1,596.40 in their motion for default judgment, which included amounts incurred through January 9, 2014.  (Nanda Decl. ¶ 42.)  By that point: (1) associates had spent 51.3 hours on the case at $205.00 per hour; (2) shareholding Michele Stafford had spent 13.3 hours on the case at $210 per hour; (3) shareholder Muriel Kaplan had spent 3.7 hours on the case at $215 per hours; and (4) paralegals had spent 53.3 hours on the case at $120 per hour.  (Nanda Decl. ¶ 42.)

On March 21, 2014, attorney Michele Stafford submitted a declaration with an updated fee request of $38,413.50 through March 18, 2014.  (Supp. Stafford Decl., Dkt. 51.)  This $18,259.00 increase in attorneys' fees included: (1) $2,803.00 to finalize the motion for default judgment; (2) $222.50 to prepare and file a request for entry of default judgment without a hearing; (3) $1,749.00 to provide the District Judge with a supplemental declaration explaining how liquidated damages and interest were calculated; (4) $1,754.50 to analyze Defendant's motion to set aside default, motion for order shortening time, motion to continue the default judgment hearing, and untimely opposition to motion for default judgment; (5) $1,439.50 to prepare and attend the February hearing on the motion for default judgment; (6) $7,052.00 to oppose Defendant's motion to set aside default; (7) $2,838.00 to engage in numerous discussions with Defendant's counsel regarding the total amount owed by Defendant and how amounts were calculated and potential settlement; and (8) $400.50 to analyze Defendant's reply in support of setting aside default.  (Supp. Stafford Decl. ¶ 8.)

In Plaintiff's reply in support of default judgment, the attorneys' fees request increased to $44,151.00 for work performed through May 4, 2014.  Stafford stated in another declaration that this $5,737.50 increase from her prior declaration comprised amounts incurred in: (a) finalizing her prior

declaration; (b) preparing for and attending a March hearing on Defendant's motion to set aside default; (c) reviewing the District Judge's order denying Defendant's motion to set aside default; (d) analyzing Defendant's opposition to the motion for default judgment; and (e) preparing Plaintiff's reply in support of the motion to default judgment.

Defendant argues that these attorneys' fees are unreasonable. According to Defendant, this is a run-of-the-mill collections case that does not justify the amount of fees sought. Defendant asserts that the Court should follow the lead of the Central District of California, whose local rules provide a schedule of fees for default judgment cases such that when the amount of judgment is between $10,000 and $50,000, fees provided by contract or statute are calculated as $1200 plus 6% of the amount over $10,000. C.D. Cal. L.R. 55-3.

The Court disagrees with Defendant and finds that Plaintiffs are entitled to $44,151.00 in reasonable attorneys' fees and $1,596.40 in costs. This is not a standard ERISA default judgment collections case. Plaintiffs incurred a great deal of fees because Defendant evaded service, reneged on proposals to settle the case, and unsuccessfully moved to set aside default. This District has not adopted the Central District's local rules. Defendant does not challenge Plaintiffs' counsel's rates, which are reasonable. Although Plaintiffs did not break their fee request down in detail by task and time spent in the Stafford declarations, at the hearing, the Court asked whether Defendant wanted the Court to order Plaintiffs to do so, and Defendant declined the offer.

### III. Conclusion

For the reasons set forth above, and for good cause shown, it is hereby recommended that default judgment be entered in the amount of $69,219.11 plus interest as provided by law. Any party may serve and file specific written objections to this recommendation within fourteen (14) working days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72; Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Judge's order.

Dated: June 2, 2014

ELIZABETH D. LAPORTE
United States Magistrate Judge

11